James Earl YOUNG, Appellant,

v.

James MABRY, Commissioner, Arkansas Department of Corrections, Appellee.

No. 78–1892.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1979.

Decided April 20, 1979.

Wayne Zakrzewski of Blackmon & Zakrzewski, Little Rock, Ark., on brief, for appellant.

Steve Clark, Atty. Gen., and Catherine Anderson, Asst. Atty. Gen., Little Rock, Ark., on brief, for appellee.

Before ROSS, STEPHENSON, and HENLEY, Circuit Judges.

PER CURIAM.

This is a habeas corpus proceeding brought by James Earl Young, an inmate of the Cummins Unit of the Arkansas Department of Correction. Young contends that his present confinement, pursuant to a 1972 judgment and commitment of the Circuit Court of Pulaski County, Arkansas, is illegal and deprives him of his liberty without due process of law in violation of the fourteenth amendment to the Constitution of the United States. Young filed his petition in the United States District Court for the Eastern District of Arkansas; jurisdiction was based on 28 U.S.C. § 2254. Respondent, Commissioner of the Arkansas Department of Correction, answered and denied that petitioner was entitled to relief.

Two evidentiary hearings were held in the district court with the second hearing being before The Honorable Elsijane T. Roy, United States District Judge.[1] In 1978 in a full but apparently unpublished opinion Judge Roy concluded that the petition was without merit and denied it. However, she granted a certificate of probable cause for appeal, and this appeal was timely taken.

James Earl Young is a recidivist criminal. In March, 1970 the safe of a mercantile establishment in Little Rock was burglarized and twenty-one books of S. & H. Green Stamps were stolen. Personnel at the local

---

1. The first hearing was held before the late District Judge Terry L. Shell who died before he could pass on the issues in the case. While petitioner contends, among other things, that delay in the processing of his petition entitles him to release from his confinement, we agree with Judge Roy that there is no merit in that contention.

stamp redemption center were advised of the theft and were supplied with relevant serial numbers. About the last of March, 1970 Young and his wife appeared at the redemption center and undertook to redeem the stolen stamps. When they became aware that the employees at the center knew that the stamp books had been stolen, Young and his wife fled in their car. The license number of the vehicle was noted and the police were notified.

Officers called at the Young home and requested petitioner and his wife to come to the police station. Upon the invitation of Young or his wife the officers entered the house to wait while Young was getting dressed. While on the premises the officers observed some trading stamps in plain view. Young and his wife refused to agree to a search of the premises without a warrant. They were placed under arrest and taken down town. Later the officers obtained a search warrant and searched the Young home. They discovered and seized the stolen stamp books that contained about 17,000 stamps.

On April 2, 1970 the Prosecuting Attorney of Pulaski County filed an information against Young and his wife charging them with felonious possession of stolen property in violation of what was then Ark.Stat. § 41–3938.[2] In the same information Young was charged separately with being an habitual criminal in violation of Ark. Stat.Ann. § 43–2328 (1977 Repl.). It was alleged that Young had been convicted of five previous felonies, and the truth of that allegation is not disputed.

Young and his wife retained experienced criminal counsel and appear to have been released on bail. For reasons with which we are not concerned, the case was passed from time to time during the rest of 1970 and well up into 1971. In early April, 1971 the original attorney of the Youngs was replaced by another lawyer, and the case was set for trial on June 29.

It seems that on the date last mentioned Mrs. Young appeared for trial but Young did not. A severance was granted, and an alias warrant for the apprehension of Young was issued.

It is inferable that the reason for the nonappearance of Young was that between April 5 and June 29, 1971 Young had been arrested and charged with a federal felony in the State of Mississippi. In any event, prior to July 29, 1971 Young received a federal sentence in Mississippi, and on that date he was received at the United States Penitentiary in Atlanta, Georgia to begin service of that sentence.

As of that time, both the United States and Arkansas were parties to the Interstate Agreement On Detainers which had been enacted into positive law by Congress in 1970 and adopted in Arkansas in early 1971.[3] At the risk of some oversimplification the Agreement, hereinafter generally called the Act, provides, subject to certain exceptions and provisos, that if an individual who is confined in an institution maintained by a jurisdiction that is a party to the Act and who is the subject of a detainer lodged by prosecuting authorities of another jurisdiction which is a party to the Act makes an appropriate demand for a trial in the courts of the jurisdiction that has placed the detainer, he must be brought to trial within 180 days after the demand is received by the prosecuting authority of the jurisdiction that has placed the detainer. And, subject to an exception about to be mentioned, if the individual is not brought to trial within the 180 day period the charge

---

**2.** That statute and others were repealed when the Arkansas Criminal Code was completely rewritten by Act 280 of 1975, Ark.Stat.Ann. § 41–101 et seq. (1977 Repl.). The ground covered by the old statute is now covered by Ark.Stat.Ann. § 41–2201 et seq., particularly §§ 2202 and 2206 (1977 Repl.).

**3.** The federal statute, Act of December 9, 1970, P.L. 91–538, 84 Stat. 1397–1403, appears as part of the Appendix to Title 18 of the United States Code. The Arkansas statute adopting the Agreement is Act 705 of 1971 that appears as Ark.Stat.Ann. § 43–3201 et seq. (1977 Repl.). The Act itself contains eight sections. The original Agreement contains nine "Articles" and is incorporated into § 1 of the Act, Ark. Stat.Ann. § 43–3201 (1977 Repl.).

or charges in question must be dismissed with prejudice.

The exception involved here appears as Article VI(a) of the Agreement (included in § 1 of the Act), which provides that the 180 day period that has been described is tolled "whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction in the matter."

In the instant case the district court found that on October 4, 1971 petitioner made a demand for a speedy trial on the Pulaski County Prosecuting Attorney, and that the demand was received in the office of that official on October 8, 1971.

Between October 8, 1971 and up into April, 1972 the State of Arkansas made no effort to bring petitioner to trial. At length, an appropriate state writ was issued, and petitioner was brought before the Circuit Court of Pulaski County shortly before the first of May, 1972. On May 1, 1972 new counsel was appointed for petitioner, and the case was set for trial on May 3. On that date the case was continued by agreement until May 16 and was still further continued by agreement until May 24, 1972 when petitioner was finally put to trial.

Petitioner was found guilty and received an habitual criminal sentence of imprisonment for thirty-one years in the Arkansas Department of Correction.

Young appealed his conviction to the Supreme Court of Arkansas, contending that he had been denied the speedy trial guaranteed by the Act, and that the stolen stamp books should have been suppressed as evidence. The Arkansas Supreme Court affirmed Young's conviction. *Young v. State*, 254 Ark. 72, 491 S.W.2d 789 (1973).

The chronology of events that took place immediately after petitioner's 1972 conviction is not entirely clear. Obviously, at some stage petitioner began the service of his thirty-one year sentence in the Arkansas Department of Correction, and he is now serving that sentence. It appears that this is the second effort that petitioner has made to secure habeas corpus relief in the federal court. He alleges in his petition that he filed a petition in the district court in 1974, that the petition was considered by District Judge Warren K. Urbom of Nebraska, sitting by designation, and that the petition was denied by Judge Urbom on account of failure of petitioner to exhaust state remedies as required by 28 U.S.C. § 2254(b); and petitioner further alleges that Judge Urbom's action was affirmed by this court; petitioner also alleges that thereafter he applied to the Arkansas Supreme Court for leave to seek post-conviction relief in the Circuit Court, and that such leave was denied. The instant petition was filed in 1977, and no claim is made that petitioner has not exhausted state remedies.

Petitioner contends here, as he did in the state courts, that he is entitled to be released because of the alleged failure of the State to bring him to trial within 180 days after the effective date of his demand for trial. He contends further that the stolen stamp books should have been suppressed as evidence, and still further petitioner asserts that the State knowingly used perjured testimony to obtain his conviction.[4]

The district court found that Young's claim that the State had knowingly used perjured testimony to obtain his conviction was completely baseless; it was also found that since the claim of illegal search and seizure had been fully explored by the state courts, consideration of it in the federal court was foreclosed by *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *see also McQueen v. Swenson*, 560 F.2d 959 (8th Cir. 1977), and *Roach v. Parratt*, 541 F.2d 772 (8th Cir. 1976). We agree.

More troublesome is petitioner's claim that he was not brought to trial in the circuit court within the 180 day period prescribed by the Act. Obviously, petitioner was not brought to trial in that court within the 180 day period regardless of whether

---

4. We have already noted our rejection of petitioner's contention that he should be granted relief because the instant petition was not decided promptly by the district court. N.1 *supra*.

the effective date of his demand is measured from October 4, 1971 or whether it is measured from October 8 of that year. However, Judge Roy concluded that a 33 day period running from February 20 to March 24, 1972 should be excluded from the 180 day period, and that with the exclusion the final trial of petitioner was timely. The view of the district court was that during the 33 day period in question petitioner was "unable to stand trial" in the Circuit Court, and that the tolling provision of Article VI(a) of the Agreement was applicable.

The problem arises from the fact that during the 33 day period petitioner, in his status as a federal prisoner, was physically present in the Eastern District of Arkansas to stand trial on a federal charge of being involved, along with Willie Houston and Donald E. Wade, in the armed robbery of the Southeast Branch of the Union National Bank of Little Rock, Arkansas in May, 1971. All three men were convicted in mid-March, 1972 and were sentenced on March 16 of that year. Appeals were perfected, and the convictions of all three were affirmed. *United States v. Young*, 468 F.2d 595 (8th Cir. 1972), *cert. denied*, 414 U.S. 849, 94 S.Ct. 139, 38 L.Ed.2d 97 (1973); *United States v. Wade and Houston*, 467 F.2d 1226 (8th Cir. 1972), *cert. denied*, 410 U.S. 933, 93 S.Ct. 1384, 35 L.Ed.2d 596 (1973). It is evident that the presence of Young in the Eastern District of Arkansas was pursuant to a writ of habeas corpus ad prosequendum issued out of the district court.

If petitioner had been removed from the federal penitentiary in Atlanta to stand trial in a federal district other than one of the two federal judicial districts of Arkansas, it could hardly be argued that during the period of his removal from Atlanta he would have been able or available to stand trial in the Circuit Court of Pulaski County. Petitioner contends, however, that since he was in fact in the Eastern District of Arkansas during the critical period, and, indeed, was confined in the Pulaski County Jail in Little Rock, the critical 33 day period of his confinement there should be included in the calculation of the statutory 180 day time limit.

We reject that contention and agree with the district court that the 33 day period should be excluded in the computation of the 180 day period.

To start with, it is not by any means clear that from a practical standpoint petitioner would have been either legally or administratively available for trial in the state court during the period in question. And it is perhaps unfortunate that counsel for the parties in effect conceded that petitioner might have been available for a state trial during the time in question. A more detailed chronology would have been helpful and could easily have been supplied had an examination been made of the records of the district court. We will fill up the gaps to the limited extent to which we are able by reference to the published opinions of this court which have been cited and to calendar matters of which we may take judicial notice.

1972 was a leap year and February contained 29 days. February 20, when petitioner was brought into Arkansas, fell on a Sunday, and the next day was the legal holiday celebrating Washington's Birthday. Between February 22, 1972 and March 24 of that year four Saturdays and four Sundays intervened. Thus, as far as actual working time of the federal and state courts is concerned, we are dealing with a period not of 33 but of 23 days. During this limited period of time counsel had to be procured for Young; he had to be arraigned; his attorney had to prepare for trial; he and his associates in crime were tried; a presentence investigation had to be made prior to imposition of the federal sentence; sentence had to be imposed; and petitioner had time thereafter within which to file a notice of appeal.[5]

---

5. *United States v. Young, supra*, reflects that sentence was imposed on March 16, 1972, and there is no intimation in the opinion that

Young's notice of appeal was not filed within the ten day period allowed by Fed.R.App.P. 4(b). *Cf. United States v. Wade and Houston*,

In those circumstances we seriously doubt that petitioner and his attorney would have been willing for petitioner to be tried in the Circuit Court, we doubt that the federal authorities would have agreed to such a trial, and on this record we are unwilling to hold that petitioner was available for trial during the critical period.

Moreover, assuming *arguendo* that petitioner would have been willing to have been tried in the Circuit Court during the critical period, and assuming that legal and administrative arrangements for such a trial could have been made, there are other obstacles petitioner must confront.

It is clear from the over-all record in the case that petitioner is both a literate and an articulate man. Yet there is nothing whatever in the record to suggest that during the time in question he ever made his presence in Arkansas known to local officials or made any demand for a Circuit Court trial prior to being returned to Atlanta.

Next, there is nothing to show that the local Prosecuting Attorney or any of his assistants or deputies knew or had any reason to know that Young was in Pulaski County or anywhere else within the State of Arkansas, or that he wanted a trial during the 33 day period, if he did.[6]

As an alternative basis of decision, the district court held that even if there had been a technical violation of the 180 day requirement of the Act, petitioner had not been prejudiced by the violation and would not be heard to complain of it in this collateral proceeding. We find it unnecessary to pass on the validity of that alternative holding. We do agree that Young suffered no prejudice from the delay in bringing him to trial in the Circuit Court.

The judgment of the district court is affirmed.

*supra*, 467 F.2d at 1227–28, where this court dealt with the timeliness of the notice of appeal filed by Wade.

6. The local jailer who had charge of both local and federal prisoners may well have recognized Young as an individual and as a local criminal,

but there is nothing to show that the jailer knew of the pending Circuit Court charges or that any knowledge that the jailer might have had about those charges would have been imputed to more responsible local officials.