5 A.3d 1090

**STATE of Maryland**

v.

**Caleb Micha PAIR.**

**No. 95, Sept. Term, 2009.**

Court of Appeals of Maryland.

Oct. 7, 2010.

158

Mary Ann Ince, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for appellant.

Brian M. Saccenti, Asst. Public Defender (Elizabeth L. Julian, Acting Public Defender, Baltimore, MD), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

This case calls upon us to construe the Interstate Agreement on Detainers ("IAD"), codified at Maryland Code (1999, 2008 Repl. Vol.), §§ 8-401 to 8-417 of the Correctional Services Article.[1] In particular, we are asked to determine whether the Circuit Court for Cecil County correctly interpreted the IAD to require dismissal of the criminal charges against Appellee, Caleb Micha Pair, on the ground that Appellant, the State of Maryland ("the State"), failed to comply with the 180-day speedy trial period set forth in the IAD. The State appealed the Circuit Court's decision to the Court of Special Appeals. We issued a writ of certiorari before briefing and argument in that court. For the following reasons, we affirm the Circuit Court's judgment of dismissal.

I.

The IAD, to which Maryland became a signatory in 1965, is a congressionally sanctioned compact among forty-eight states, the Federal Government, Puerto Rico, the U.S. Virgin Islands, and the District of Columbia. Drafted in 1956 by the Council of State Governments, the IAD has its origins in a report by a group of federal, state, and private entities (the "Joint Committee on Detainers") highlighting the significant problems arising from the use of detainers. The IAD is based on a legislative finding that " 'charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation.' " *United States v. Mauro*, 436 U.S. 340, 351, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978) (quoting Article I of the

---

1. Unless otherwise noted, all subsequent statutory citations will be to the Correctional Services Article of the Maryland Code (1999, 2008 Repl.Vol.).

IAD, found at § 8–403). The Supreme Court explained in *Carchman v. Nash:*

> The inmate who has a detainer against him is filled with anxiety and apprehension and frequently does not respond to a training program. He often must be kept in close custody, which bars him from treatment such as trustyships, moderations of custody and opportunity for transfer to farms and work camps. In many jurisdictions he is not eligible for parole; there is little hope for his release after an optimum period of training and treatment, when he is ready for return to society with an excellent possibility that he will not offend again. Instead, he often becomes embittered with continued institutionalization and the objective of the correctional system is defeated.

473 U.S. 716, 720, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985) (quoting Council of State Governments, Suggested State Legislation, Program for 1957, p. 74 (1956)). *See also generally* Christopher D. Serf, *Federal Habeas Corpus Review of Non-constitutional Errors: The Cognizability of the Interstate Agreement on Detainers,* 83 Colum. L.Rev. 975, 978 (1983) (summarizing the significant hardships that detainers imposed upon prisoners prior to enactment of the IAD).

The IAD consists of nine articles, the first of which sets forth its policy and purpose:

> The party states find that charges outstanding against a prisoner, detainers [2] based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this Agreement to encourage the expeditious and orderly disposition of such

---

**2.** The IAD does not define "detainer." We have described a detainer as "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *Stone v. State,* 344 Md. 97, 108, 685 A.2d 441, 446 (1996) (quotation marks and citation omitted).

charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this Agreement to provide such cooperative procedures.

Article I (§ 8–403). In short, the purpose of the IAD is to facilitate speedy disposition of charges underlying detainers.

The IAD sets forth two procedures designed to effectuate its purpose. First, Article IV of the IAD (§ 8–406) "enables a participating State to gain custody of a prisoner incarcerated in another jurisdiction, in order to try him on criminal charges[,]" *Reed v. Farley*, 512 U.S. 339, 341, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994), and, second, Article III (§ 8–405) "gives a prisoner incarcerated in one State the right to demand the speedy disposition of any untried indictment, information or complaint that is the basis of a detainer lodged against him by another State[,]" *Carchman*, 473 U.S. at 718–19, 105 S.Ct. 3401 (internal quotation marks and citation omitted). The present case involves a prisoner's request, pursuant to § 8–405, for a speedy disposition of outstanding charges.

The interstate transfer process begins when the "receiving" state lodges a detainer with the warden "or other official" of the institution where the prisoner in question is currently imprisoned, in what is referred to as the custodial or "sending" state. *See* § 8–405(b). The warden or other authority in the sending state is then obligated to inform the inmate of the detainer's source and contents, and of the inmate's right, under the IAD, to request final disposition of the charges on which the detainer is based. *See* § 8–405(c).

To exercise the right of speedy disposition, the inmate must file a request for IAD relief with the warden, who must forward the request to appropriate authorities in the receiving state. *See* § 8–405(d). This document operates as a request

by the prisoner for final disposition of all untried charges underlying the detainer and is deemed to be a waiver of extradition. *See* § 8–405(d); *Mauro*, 436 U.S. at 351, 98 S.Ct. 1834.

Once the receiving state receives the request,[3] the IAD requires that jurisdiction to bring the prisoner to trial within 180 days, unless one of two provisions of the IAD is invoked. The first of these provides that a court in the receiving state may issue a continuance "for good cause shown in open court," so long as the continuance is "necessary and reasonable" and "the prisoner or the prisoner's counsel [is] present." § 8–405(a).[4] The second provides that the 180–day requirement

---

**3.** Section 8–416 states that the 180–day time period does not begin until the appropriate court and the appropriate State's Attorney or other authorized person "actually receive[ ]" the prisoner's request. That section provides:

> As to any request by an individual confined in another party state for trial in this State, written notice may not be deemed to have been delivered to the prosecuting officer and the appropriate court of this State in accordance with § 8–405(a) (Article III (a) of the Agreement) of this subtitle and notification may not be deemed to have been given in accordance with § 8–405(d) or § 8–406(b) of this subtitle (Article III (d) and Article IV (b) of the Agreement) until the notice or notification is actually received by the appropriate court and the appropriate State's Attorney of this State, the State's Attorney's deputy or assistant, or any other person empowered to receive mail on behalf of the State's Attorney.

Maryland may well be the only party state to have added a provision of this sort to its IAD. In any event, the Supreme Court has interpreted the "caused to be delivered" phrase in § 8–405(a) of the IAD to commence the running of the 180–day period upon receipt of the prisoner's request for a speedy disposition of the charges that are the subject of the detainer. *Fex v. Michigan*, 507 U.S. 43, 52, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993).

**4.** Section 8–405(a) provides, in pertinent part:

> (a) *Notice of prisoner's place of imprisonment and request for final disposition.*—Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within 180 days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting

"shall be tolled whenever and for as long as the prisoner is *unable to stand trial,* as determined by the court having jurisdiction of the matter." § 8–408(a) (emphasis added).[5] If neither of these tolling provisions is properly invoked, then the receiving state's failure to comply with the 180–day provision requires dismissal of the charges, with prejudice. *See* § 8–407(c).[6]

Because the purpose of the IAD is to help effectuate the rehabilitative process for those who are incarcerated, it applies only to individuals who have "entered upon a term of imprisonment." § 8–405(a). As we shall discuss in more detail, *infra,* the IAD has been interpreted not to apply to individuals in pre-trial confinement who are awaiting the disposition of charges brought by the state in which they are detained. *See, e.g., Painter v. State,* 157 Md.App. 1, 17, 848 A.2d 692, 701 (2004) (collecting cases).

---

officer's jurisdiction written notice of the place of the prisoner's imprisonment and the prisoner's request for a final disposition to be made of the indictment, information, or complaint; provided that for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.
. . .

5. Section 8–408(a) provides:
(a) *Computation of time periods.*—In determining the duration and expiration dates of the time periods provided in §§ 8–405 and 8–406 of this subtitle (Articles III and IV of the Agreement), the running of these time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.

6. Section 8–407(c) provides:
(c) *Dismissal of indictment.*—If the appropriate authority shall refuse or fail to accept temporary custody of the person, or in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in § 8–405 or § 8–406 of this subtitle (Article III or IV of the Agreement), the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based on the indictment, information, or complaint shall cease to be of any force or effect.

## II.

Appellee was convicted of robbery by a Delaware state court in August 2005, and began serving the sentence for that crime at a correctional facility in that state. Just over one month after the Delaware robbery conviction, Appellee was indicted in the Circuit Court for Cecil County, Maryland, on an unrelated charge of armed robbery. On May 18, 2006, the State lodged a detainer with the proper authority in Delaware, a signatory to the IAD.

Appellee timely filed a request under the IAD for disposition of the charges. The State received that request on July 26, 2007, and offered to take temporary custody of Appellee until final disposition of the charges. On September 6, 2007, Delaware refused the offer because, meanwhile, Delaware had charged Appellee with assault and related offenses arising out of a March 2007 incident allegedly involving Appellee and a correctional officer at the institution where Appellee was housed.

The following day, September 7, 2007, an Assistant State's Attorney for Cecil County filed in the Circuit Court for Cecil County a motion for continuance of trial on the Maryland charges until resolution of the pending Delaware charges. We have mentioned that the IAD requires continuances to be granted upon "good cause shown in open court, the prisoner or the prisoner's counsel being present[.]" § 8–405(a). The Circuit Court granted the motion four days later, without conducting a hearing.

On May 6, 2008, Appellee was acquitted of all the Delaware charges. Delaware, however, did not inform the Cecil County State's Attorney Office of the acquittal. Indeed, the State's Attorney's Office did not learn of the outcome of the Delaware proceedings until July 24, 2008, when it received Appellee's second request for IAD relief. Following that, the State accepted temporary custody of Appellee and set a trial date of October 15, 2008, for disposition of the pending Maryland charges.

On that date, Appellee, represented by counsel, filed a motion to dismiss the charges, citing the State's failure to prosecute him within 180 days of July 26, 2007, the date on which the State received his initial request. Appellee argued that, although Delaware had informed the State that it was unwilling to send Appellee to Maryland for trial, Delaware's denial of the State's request for temporary transfer did not abrogate the State's responsibilities under the IAD.

The State offered three arguments in opposition to the motion to dismiss. The State argued that Appellee's incarceration in Delaware constituted what the State described as "pretrial confinement awaiting disposition of [his] charge," so the IAD, and consequently its 180–day requirement, did not apply. The State also argued that the continuance the Circuit Court granted in September 2007 tolled the 180–day period for the duration of the time leading up to Appellee's temporary transfer to Maryland on July 24, 2008. Finally, the State argued that, even if the continuance did not satisfy the requirements of § 8–405, the 180–day time period nonetheless was tolled from September 6, 2007 (the date Maryland learned of Delaware's refusal to transfer Appellee) until Appellee's transfer to Maryland on July 24, 2008, because, pursuant to § 8–408(a), Appellee was "unable to stand trial" in Maryland during that time.

The Circuit Court (the Honorable Dexter M. Thompson, Jr. presiding) heard the motion to dismiss. The court rejected each of the State's arguments and, agreeing with Appellee that Maryland had violated the 180–day provision of the IAD, dismissed the charges with prejudice. The court reasoned that "the IAD definitely applies" to Appellee because, when Maryland lodged the detainer, Appellee met the condition of the IAD that he had "entered upon a term of imprisonment" in Delaware, even though, for some period of time thereafter, he was also awaiting trial on the new Delaware assault charges.

The court also found no merit in the State's argument that the Circuit Court's grant of the State's September 7, 2007

request for continuance tolled the 180–day clock. The court ruled that the continuance was without effect because it was obtained without compliance with the IAD requirement of a hearing in open court, with Appellee or his counsel present.[7]

The court then turned to the State's contention that Appellee had been "unable to stand trial," under § 8–408(a), on the Maryland charges because of Delaware's refusal to send him during the pendency of the Delaware assault charges. The court divided into four time periods the 447 days between the time Appellee requested disposition of the Maryland charges and the scheduled trial date:

(1) the 42 days between July 26, 2007, when Maryland received Appellee's initial IAD request, and September 6, 2007, when Delaware informed Maryland that it would not send him to Maryland for trial;

(2) the 243 days between September 6, 2007, and May 6, 2008, when Appellee was acquitted of the new charges in Delaware;

(3) the 79 days between May 6, 2008, and July 24, 2008, when Maryland learned of the acquittal; and

(4) the 83 days between July 24, 2008, and October 15, 2008, the scheduled trial date.

The court found no tolling during the first period (42 days). The court found tolling during the second period (243 days) because "Delaware refused to send [Appellee] to Maryland" pending disposition of the Delaware charges. The court disagreed with the State, however, that such tolling continued beyond May 6, 2008, the date on which Appellee was acquitted of those charges. Rather, the court reasoned, the 180–day clock resumed on that day and ran for 79 days through July 24, 2008, the day the State learned about the acquittal (the third period), and continued for another 83 days to the scheduled trial date of October 15, 2008 (the fourth period), which, when added to the 42 days at the outset, created a total delay

---

7. The State wisely does not challenge on appeal the correctness of the court's ruling that the continuance was without effect.

of 204 days. Because the total non-tolled time exceeded 180 days, the court concluded that dismissal of the indictment was required by the terms of § 8–407(c).

The State noted a timely appeal to the Court of Special Appeals. On September 14, 2009, before briefing and argument in that court, we granted a writ of certiorari, *State v. Pair*, 410 Md. 559, 979 A.2d 707 (2009), to answer the following question:

> Did the circuit court err in dismissing the charges on the basis of violation of the 180–day period of the Interstate Agreement on Detainers where the trial court failed to toll the 180–day period as required after Delaware refused to transfer [Appellee] and [Appellee] was unable to stand trial in Maryland as a result?

### III.

The propriety of the Circuit Court's dismissal of the charges hinges on whether that court correctly interpreted and applied the IAD to the facts before it. As the facts are not in dispute, we have only to decide whether the court was legally correct in its interpretation of the law. *Schisler v. State*, 394 Md. 519, 535, 907 A.2d 175, 184 (2006). In doing so, we must examine the provisions of the IAD with the goal of ascertaining the legislative intent, by resorting first to the plain language of the law. *Thanner v. Balt. County*, 414 Md. 265, 277, 995 A.2d 257, 264 (2010). We strive to avoid constructions that are inconsistent with common sense or render any of the statutory language nugatory or surplusage. *Lonaconing Trap Club, Inc. v. Md. Dep't of the Env't*, 410 Md. 326, 339, 978 A.2d 702, 709 (2009). If the language is ambiguous because it is susceptible to more than one equally reasonable construction, we look to legislative intent to resolve the ambiguity. *Melton v. State*, 379 Md. 471, 477, 842 A.2d 743, 746 (2004).

The IAD is a congressionally sanctioned compact, and as a federal law is subject to federal construction. *Cuyler v. Adams*, 449 U.S. 433, 442, 101 S.Ct. 703, 66 L.Ed.2d 641

(1981). Therefore, we defer to the Supreme Court's interpretation of it. Moreover, by its express terms, the IAD "shall be liberally construed so as to effectuate its purposes." § 8–411.

## A.

██ We turn first to the State's argument that the Circuit Court erred in concluding that the IAD applies to the facts of this case. In the State's view, the IAD does not apply because, in terms of IAD law, Appellee was not serving "a term of imprisonment" in Delaware, but was instead in "pretrial status" in that state due to the pending Delaware charges. We disagree.

We have said that the IAD requires that a prisoner subject to a detainer must "ha[ve] entered upon a term of imprisonment in a penal or correctional institution of a party state," § 8–405(a), at the time the detainer was lodged, in order to invoke the speedy trial provision of the IAD. We also have mentioned that courts have consistently construed that language to mean that the IAD does not apply to a prisoner in pre-trial confinement. *Painter,* 157 Md.App. at 17, 848 A.2d at 701. *See United States v. Currier,* 836 F.2d 11, 16 (1st Cir.1987) (the IAD applies "exclusively to prisoners who are actually serving their sentences, and not to pretrial detainees"); *accord United States v. Wilson,* 27 F.3d 1126, 1130 (6th Cir.), *cert. denied,* 513 U.S. 976, 115 S.Ct. 452, 130 L.Ed.2d 361 (1994); *United States v. Muniz,* 1 F.3d 1018, 1025–26 (10th Cir.), *cert. denied,* 510 U.S. 1002, 114 S.Ct. 575, 126 L.Ed.2d 474 (1993); *United States v. Bayless,* 940 F.2d 300, 303 (8th Cir.1991); *United States v. Dobson,* 585 F.2d 55, 59 (3d Cir.), *cert. denied,* 439 U.S. 899, 99 S.Ct. 264, 58 L.Ed.2d 247 (1978); *State v. Hargrove,* 273 Kan. 314, 45 P.3d 376, 383, *cert. denied,* 537 U.S. 982, 123 S.Ct. 452, 154 L.Ed.2d 345 (2002); *State v. Reed,* 266 Neb. 641, 668 N.W.2d 245, 251–52 (2003), *cert. denied,* 540 U.S. 1154, 124 S.Ct. 1158, 157 L.Ed.2d 1051 (2004). We agree with the Painter Court's assessment of the "entered upon a term of imprisonment" limitation on the applicability of the IAD:

[This] limitation is consistent with the point of the Agreement.... [T]he purpose of the IAD is to minimize the adverse impact of a foreign prosecution on rehabilitative programs of the confining jurisdiction. As a pretrial detainee has little or no interest in any of the rehabilitative programs of the institution[ ] in which he is being temporarily detained pending trial, there is no basis to justify invoking the IAD.

157 Md.App. at 17, 848 A.2d at 701 (internal quotation marks and citations omitted).

It is undisputed that, when the State lodged the detainer, Appellee, then serving the sentence imposed upon his August 2005 robbery conviction, had "entered upon a term of imprisonment" in Delaware. The State's insistence that, for purposes of the IAD, Appellee was in pre-trial detention in Delaware confuses the basis for Delaware's incarceration of Appellee in the first place (the 2005 conviction) with Delaware's reason for subsequently refusing to send him to Maryland (the pendency of the new assault charges). Moreover, even if the language of § 8–405(a) supports the State's argument, which it does not, the argument is undermined by a critical fact: Appellee could not have been in pre-trial detention at the time the State filed the detainer because the incident that formed the basis of the new Delaware charges occurred ten months later.

Beyond that, the State's argument subverts the purpose of the IAD, which is avoidance of interruption of the rehabilitative efforts on the inmate's behalf in the sending state. The pendency of the Delaware charges does not change the fact that before, while, and after the charges were pending, Appellee was serving a term of imprisonment on the 2005 Delaware conviction. Appellee therefore maintained throughout his confinement in Delaware a continued interest in his rehabilitation and in avoiding any adverse consequences on the conditions of his confinement that may have been precipitated by the detainer. *See United States v. Roy,* 771 F.2d 54, 58 (2d Cir.1985) (holding that a prisoner who was serving a sentence on a Connecticut conviction could invoke the protections of the

IAD in response to a federal detainer because "[t]he fact that additional Connecticut charges were pending against him did not diminish his interests in his rehabilitation and in avoiding the adverse consequences on the conditions of his confinement caused by the filing of a detainer"), *cert. denied,* 475 U.S. 1110, 106 S.Ct. 1520, 89 L.Ed.2d 918 (1986).

We therefore hold that Appellee was serving "a term of imprisonment" in a Delaware state correctional institution within the meaning of the IAD, notwithstanding that, for a period of time during that incarceration, he also faced pending Delaware charges. The IAD therefore applies to Appellee, and he is entitled to the speedy trial protections afforded by it.

### B.

We now consider whether the Circuit Court properly concluded that the State violated the 180–day speedy trial provision of the IAD. There is no question that a total of 447 days elapsed between July 26, 2007, the date on which Maryland received Appellee's initial request for speedy disposition of the charges and October 15, 2008, the scheduled trial date. The question is whether enough of that 447–day period, if any portion of it at all, was tolled so as to bring the State into compliance with the 180–day requirement of the IAD. The parties do not dispute the four-period breakdown used by the Circuit Court in addressing this issue, and we adopt it as we consider the State's challenge to the legal correctness of the court's analysis.

The State concedes that the Circuit Court correctly concluded that the 180–day period began to run on July 26, 2007, and ran for 42 days until September 6, 2007, when Delaware informed Maryland that Appellee could not be transferred because of the by-then pending charges in Delaware. We agree with the State that the court correctly charged that first 42–day period against the State.

The State, looking next to the fourth period, further concedes that the court correctly determined that the 83 days from July 24, 2008, when Maryland received notice from

Appellee of his acquittal of the assault, until the October 15 scheduled trial date count against the State in the 180-day calculation. Again, we agree with the State that the court correctly analyzed that time period.

The parties dispute the effect upon the 180-day calculus of the second and third time periods. The second period, totaling 243 days, ran from September 6, 2007, when Delaware notified Maryland of its refusal to send Appellee to Maryland before disposition of the Delaware charges, through May 6, 2008, the date on which Appellee was acquitted of those charges. The Circuit Court concluded that the 180-day period was tolled for those 243 days because, during that time, Appellee was "unable to stand trial," as that term is used in § 8-408(a). The State, not surprisingly, agrees with the court's conclusion, arguing that it is consistent with a proper construction of the term "unable to stand trial." Appellee disagrees, arguing that only the six days during which he was being tried on the Delaware charges was he "unable to stand" trial in Maryland.

As for the 79 days of the third period, that is, the time between Appellee's acquittal on May 6, 2008, and July 24, 2008, the day the State learned of it, the Circuit Court concluded that the 180-day time period was not tolled because the IAD places on the State the responsibility to bring Appellee to trial, "even though the State of Maryland might not have done anything wrong." The State challenges this analysis, arguing that it should not be penalized for Delaware's failure to alert Maryland officials that Appellee had been acquitted. Appellee responds that the Circuit Court correctly decided that this third, 79-day period should be charged against the State.

The parties' arguments therefore reduce to the following: By the State's reasoning, the 180-day speedy trial clock was tolled for all of both the second period (243 days) and the third period (79 days) because for all of that time Appellee was "unable to stand trial." Therefore, only 125 days of the total period (447 days) count in the speedy trial calculus, resulting

in no violation of the 180–day requirement as of October 15, 2008, the date on which the Circuit Court wrongly, in the State's view, dismissed the charges. By Appellee's reasoning, only six days (the days of the Delaware assault trial) were tolled because for only those days was he unable to stand trial in Maryland, resulting in a 441–day delay in bringing him to trial on the Maryland charges, thereby violating the IAD. The Circuit Court, as we have seen, disagreed with both parties and concluded that only during the second, 243–day period was Appellee unable to stand trial, resulting in a delay of 204 days in bringing Appellee to trial in Maryland, thereby violating the IAD and requiring dismissal of the charges.

We, like the parties and the Circuit Court, view the outcome of this appeal as ultimately turning on the meaning of the phrase "unable to stand trial," as it is employed in the IAD. For the reasons we next discuss, we agree with the Circuit Court that Appellee was "unable to stand trial" in Maryland only for the 243–day period during which the assault charges were pending against him in Delaware.

## C.

The parties have not directed us to a Maryland appellate decision construing the phrase "unable to stand trial," and we have found none. In construing that phrase, however, we do not write on a clean slate. Our research discloses that, with the apparent exception of the Fifth Circuit, all of the federal and state courts that have addressed this issue in reported decisions have held, albeit through slightly different analyses, that a prisoner who desires a speedy disposition of a detainer is "unable to stand trial" on the charges underlying the detainer whenever such unavailability can be attributed to "legal" or "administrative" reasons, such as, in the present case, the pendency of charges in the sending jurisdiction.

The Second, Fourth, and Ninth Circuits interpret the term "unable to stand trial" by reference to the analogous tolling provision contained in the Speedy Trial Act of 1974, 18 U.S.C. § 3161(h) (2008), which tolls the 180–day speedy trial require-

ment in various circumstances, including "delay resulting from trial with respect to other charges against the defendant." [8] Those courts reason that the Speedy Trial Act and the IAD have the same purpose and should therefore be construed *in pari materia*. *See United States v. Collins*, 90 F.3d 1420, 1427 (9th Cir.1996); *United States v. Cephas*, 937 F.2d 816, 819 (2d Cir.1991), *cert. denied*, 502 U.S. 1037, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992); *United States v. Odom*, 674 F.2d 228, 231–32 (4th Cir.), *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2946, 73 L.Ed.2d 1341 (1982).

The Seventh and Eighth Circuits simply toll the 180–day period while the prisoner is "legally or administratively" unavailable. *See United States v. Neal*, 564 F.3d 1351, 1354 (8th Cir.2009); *United States v. Roy*, 830 F.2d 628, 635 (7th Cir.1987); *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988). Particularly pertinent here, the Eighth Circuit has held that a prisoner is "legally or administratively" unavailable to be sent elsewhere to stand trial on a detainer

---

**8.** Section 3161(h)(1) tolls the clock in any of the following instances:

(A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;

(B) delay resulting from trial with respect to other charges against the defendant;

(C) delay resulting from any interlocutory appeal;

(D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

(E) delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure;

(F) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;

(G) delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government; and

(H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

for as long as the prisoner is involved in court proceedings in the sending jurisdiction. *See Young v. Mabry,* 596 F.2d 339, 343 (8th Cir.) (holding that the time the defendant was in federal custody awaiting trial on federal charges was properly excluded in determining, under the IAD, whether the defendant was brought to trial on the state charges on which the defendant had requested speedy disposition), *cert. denied,* 444 U.S. 853, 100 S.Ct. 107, 62 L.Ed.2d 69 (1979).[9]

Insofar as we can discern, the Fifth Circuit is alone among the federal courts that have spoken on the subject, by interpreting the "unable to stand trial" proviso as applying only to prisoners who are physically or mentally incapacitated. *See Birdwell v. Skeen,* 983 F.2d 1332, 1341 (5th Cir.1993) (construing the phrase "unable to stand trial" to mean only a physical or mental inability, which does not include the delay attendant to the processing of pre-trial motions).[10]

Like the federal courts, our sister state courts employ various analyses for determining when an inmate is "unable to stand trial" due to out-of-jurisdiction charges. Yet, all conclude, like most of the federal courts we have identified, that the standard for inability to stand trial is one akin to "legal or administrative" unavailability, which includes the unavailability to stand trial in the receiving state until pending charges in the sending state are resolved. *See Johnson v. Comm'r of Corr.,* 60 Conn.App. 1, 758 A.2d 442, 450–51 (2000) (affirming the denial of a Connecticut prisoner's petition to quash a Massachusetts detainer because, until the prisoner's charges were resolved in Connecticut, he was "unable to stand trial" in Massachusetts, thereby tolling the 180–day requirement);

---

9. A district court in the Sixth Circuit employed a similar analysis in coming to the same conclusion as did the *Young* Court. *See United States v. Mason,* 372 F.Supp. 651, 653 (N.D.Ohio 1973) (ruling that the period during which the defendant was standing trial in another jurisdiction should be excluded from the 180–day period, "since if a person is standing trial in one state he cannot be expected to be standing trial in another state simultaneously").

10. To our knowledge, however, the Fifth Circuit has not addressed a factual scenario like the one presented here.

*State v. Wood,* 241 N.W.2d 8, 14 (Iowa 1976) (prisoner unable to stand trial in Iowa during pendency of proceedings in Kansas); *State v. Binn,* 208 N.J.Super. 443, 506 A.2d 67, 69–70 (App.Div.1986) (prisoner unable to stand trial in New Jersey because of the legitimate claim of New York to hold him to dispose of the remaining New York charges); *People v. Vrlaku,* 134 A.D.2d 105, 523 N.Y.S.2d 143 (N.Y.App.Div.1988) (tolling properly applied while prisoner awaited federal drug charges in federal detention facility); *aff'd,* 73 N.Y.2d 800, 537 N.Y.S.2d 24, 533 N.E.2d 1053 (1988).

■ Like the majority of our sister federal and state courts, we construe the "unable to stand trial" language of § 8–408(a) to include the time during which the sending jurisdiction is actively prosecuting the inmate on current and pending charges. This construction is consistent with a practical common-sense interpretation of § 8–408(a), and with the purpose clause of the IAD, which explains the necessity for "cooperative procedures" among the states, *see* § 8–403.

We reject Appellee's suggestion that Maryland had the responsibility to persuade Delaware to send Appellee to Maryland while he was awaiting resolution of the Delaware charges. Although the IAD requires that the sending state "shall offer to deliver temporary custody of [a] prisoner" to the receiving state, § 8–407(a), the IAD does not require the sending state to transfer a prisoner who faces pending charges in that state. We therefore are in accord with the cases cited above that the IAD is not designed to deprive the sending state of its right to resolve pending charges in that state.

Applying this construction of § 8–408(a) to the present case, we hold that the 180–day speedy trial period of the IAD was properly tolled for all of the 243 days during which Appellee awaited disposition of the Delaware assault charges.

### D.

■ Finally, we must decide whether the State is correct that Appellee also was "unable to stand trial" on the Maryland charges during the 79 days between the date on which he was

acquitted on the Delaware charges and the date on which Maryland learned, through Appellee, of the acquittal. The Circuit Court decided that this period should not count as a time when Appellee was unable to stand trial, and Appellee, of course, concurs. Once again we agree with the Circuit Court.

■ Courts have routinely stressed that the IAD is remedial in nature and should be liberally construed in favor of the prisoner against whom the detainer is lodged. *See United States ex rel. Esola v. Groomes*, 520 F.2d 830, 836 (3d Cir. 1975); *State v. Sassoon*, 240 Ga. 745, 242 S.E.2d 121, 122–23 (1978); *People v. Christensen*, 102 Ill.2d 321, 80 Ill.Dec. 302, 465 N.E.2d 93, 96 (1984); *Commonwealth v. Thurston*, 834 A.2d 595, 599 (Pa.Super.Ct.2003). It is also understood that "[t]he burden of compliance with the procedural requirements of the IAD rests upon the party states and their agents; the prisoner, who is to benefit by this statute, is not to be held accountable for official administrative errors which deprive him of that benefit." *Pittman v. State*, 301 A.2d 509, 514 (Del.1973). Moreover, "[u]nreasonable time delays caused by the custodial state do not toll the statutory [180–day] period." *Short v. State*, 205 P.3d 195, 200 (Wyo.2009).

In *Pittman*, the Delaware Supreme Court addressed whether the receiving state must be charged for delays attributable to the sending state. In that case, the trial court refused to dismiss the Delaware charges against the prisoner even though Delaware had failed to bring the prisoner to trial within 180 days of his request for IAD relief. Delaware argued that the delay was caused by Maryland's failure to abide by the IAD by not forwarding Pittman's request for IAD relief to the relevant Delaware official, and that "the mistakes of the Maryland officials should not frustrate Delaware's timely attempt to bring accused felons to trial." 301 A.2d at 512. The Delaware Supreme Court reversed, holding that the IAD required dismissal of the charges. The court explained that,

[i]f, ... as the State urges, we should strictly construe this statute, we must do so in favor of the prisoner because

the State, through its agents and its control of the procedural aspects of the IAD, controls the only ultimate guarantee of performance for the benefit of the prisoner.

\* \* \*

. . . . It would be a gross violation of the spirit of the IAD if we were to penalize Pittman for the neglect of the [Delaware] Attorney General's office or the mistake of the Maryland official. The purpose of the Act is to enable a prisoner in another state to compel prompt trial of a criminal charge in Delaware without awaiting his release in the other state. That purpose is completely destroyed if state officials fail to perform the duties imposed upon them by the Act.

*Id.* at 513. To conclude otherwise,

not only misreads the purpose [of the IAD], but effectively emasculates it as well. The Legislature enacted no specific requirement that a prisoner, for whose benefit the IAD was enacted, be apprised of the technical aspects of the law. Indeed, the Legislature has placed one, and only one burden on the prisoner, that is, to ask the prison official who has custody over him to prepare and send the forms to the jurisdiction from which a detainer is lodged against him.

*Id.* at 512–13. *See Nelms v. State,* 532 S.W.2d 923, 926–27 (Tenn.1976) (noting that "[the defendant] should not be charged with the responsibility of insuring [sic] that his captors have complied with provisions of the law when he has no control over their activities. By placing the burden of insuring [sic] compliance on the two states involved, the defendant is less likely to become the victim of their contributory inaction") (internal quotation marks omitted); *accord State v. Ferguson,* 41 Ohio App.3d 306, 535 N.E.2d 708, 713–14 (1987) (discussing with favor *Pittman* and *Nelms,* and concluding that "the sending state's failure to inform the receiving state of the accused's whereabouts or offer temporary custody does not justify the receiving state's inability to bring the accused to trial within one hundred eighty days").

We agree with the reasoning underpinning the decisions in *Pittman, Nelms* and *Ferguson,* which leads us readily to

conclude that Appellee was *not* "unable to stand trial" in Maryland within the meaning of the IAD during the 79 days between his acquittal in Delaware and Maryland's learning of that fact. We therefore hold that the Circuit Court correctly ruled that the 180–day speedy trial period in the IAD was not tolled during the 79 days that followed Appellee's acquittal of the Delaware charges.

## E.

In sum, the 42 days that elapsed following receipt by the appropriate Maryland authorities of Appellee's request for speedy disposition of the Maryland charges, added to the 79 days between Appellee's acquittal of the Delaware charges and Maryland's learning of it, and to the subsequent 83 days leading to up to Appellee's scheduled trial date of October 15, 2008, results in 204 non-tolled days. Because the delay exceeded 180 days, the Circuit Court did not err in dismissing the indictment, with prejudice.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY CECIL COUNTY.**

Judge MURPHY joins the judgment only.