**UNITED STATES of America,**
**Plaintiff,**

v.

**George John KOUFUS, Defendant.**

**No. 3:00–CR–88–H.**

United States District Court,
W.D. Kentucky.

Aug. 29, 2003.

Hancy Jones, III, U.S. Attorney Office, Louisville, KY, for Plaintiff.

Samuel Manly, Patrick J. Renn, Smith & Helman, Louisville, KY, for Defendant.

## MEMORANDUM OPINION

JOHN G. HEYBURN II, Chief Judge.

Presently before the Court is Defendant, George John Koufus's, Motion to Dismiss Indictment for Violation of the Interstate Agreement on Detainers, 18 U.S.C.App. 2 § 2 ("IAD"). Koufus alleges that he has not been brought to trial within one hundred twenty days of arrival into federal custody as required by the IAD and, therefore, that the federal indictment pending against him must be dismissed. The United States maintains that the IAD

is not applicable because the Court withdrew the detainer at Koufus's request. For the reasons set forth in this memorandum, the Court must deny Koufus's motion to dismiss.

## I.

On July 29, 2000, Koufus pled guilty to eleven felony counts of first degree wanton endangerment and one felony count of first degree perjury in Jefferson County Circuit Court and was sentenced to fifteen years in the custody of the Kentucky Department of Corrections. A little over a month later on July 19, 2000, a Federal Grand Jury returned a federal indictment against Koufus charging him with five counts of bank fraud in violation of 18 U.S.C. § 1344. As a result, the United States Marshal for the Western District of Kentucky issued a "detainer against sentenced prisoner" against Koufus on July 25, 2000. One day later, on July 26, 2000, the detainer was lodged with the Records Office of Roederer Correctional Complex where Koufus was imprisoned. Koufus acknowledged receipt of the detainer and refused to waive either his rights under the Interstate Agreement on Detainers or his extradition rights under Kentucky's version of the Uniform Criminal Extradition Act.

On August 3, 2000, the Court issued a writ of habeas corpus *ad prosequendum* commanding the United States Marshal to bring Koufus before the Court on August 22, 2000. On August 15, 2000, Koufus's counsel filed a "Declaration of Defendant's Identity and Motion, Consent and Waiver for Writs of Habeas Corpus *Ad Prosequendum* to Keep Defendant in State Custody Except as Needed for Proceedings in this Action; To Dispense with Detention Hearing; and to Order Detainer to be Released, Withdrawn or Otherwise Set Aside as Unnecessary." Defendant was then transported to this Court on August 20, 2000. Upon arrival Defendant waived a detention hearing and was arraigned. The Court set the case for an October 31, 2000, jury trial. On August 23, 2000, the Court issued "Findings of Fact, Conclusions of Law and Order for Writs of Habeas Corpus *Ad Prosequendum* to Keep Defendant in Custody Except as Needed for Proceedings in this Action to Dispense with Detention Hearing and to Order Detainer to be Released Withdrawn or Otherwise Set Aside as Unnecessary."[1] Specifically, the Court ordered: "the Marshal is **ORDERED FORTHWITH**—that is, **IMMEDIATELY UPON RECEIPT OF A COPY OF THIS ORDER**—to withdraw, release, or otherwise set aside as unnecessary the 'detainer against sentenced prisoner' dated July 25, 2000, because ... defendant is serving a final, non-appealable state court sentence of 15 years on which he will not even be eligible to see the Kentucky Parole Board or otherwise be eligible for parole or early release for three (3) years, by which time a final judgment will certainly have been entered in this action and at which time a copy of that judgment can be filed as a detainer, if such is necessary or appropriate." (9/5/2000 Order at 7) (emphasis in original). The Court's decision to withdraw the detainer was largely motivated by Defendant's representation to the Court that the detainer would likely negatively impact Koufus's classification in Kentucky state prison. Koufus was returned to state custody on September 20, 2000.

On October 20, 2000, eleven days before Koufus's trial was scheduled to begin, Koufus and the United States filed a joint motion to declare the case complex, and continue the case generally. In conjunction with the joint motion to continue, De-

---

1. The Court amended its findings on September 5, 2000.

fendant explicitly waived his rights under the Speedy Trial Act and under the United States Constitution. On May 24, 2001, the Court conducted a conference with the United States and defense counsel present and set the case for an October 9, 2001 trial. On September 25, 2001, defense counsel filed a motion to remand Koufus's case from the trial calendar and to continue it generally. In making this motion, Defendant waived his rights under the Speedy Trial Act and under the United States Constitution. This motion was granted and on April 22, 2002, the Court rescheduled the trial for November 19, 2002. On October 23, 2003, the United States made a motion, which Koufus did not oppose, to continue the jury trial due to a "scheduling conflict." On October 25, 2002, the Court granted the United States's motion and continued the trial until January 29, 2003. On January 24, 2003, counsel for the parties appeared in open court and made a showing of good cause as to why the case should be remanded from the trial calendar of January 29, 2003, at which time counsel consented on defendant's behalf to such a continuance. The Court remanded the case and set trial for March 4, 2003. After Defendant raised these issues, that trial date was continued to await their resolution.

## II.

■ The Interstate Agreement on Detainers is a compact entered into by forty-eight states, the United States and the District of Colombia to establish proce-dures for resolution of one jurisdiction's outstanding charges against another jurisdiction's prisoner. *New York v. Hill*, 528 U.S. 110, 111, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). The IAD also contains certain procedures by which the prisoner may demand the speedy disposition of certain charges against him in another jurisdiction. *See United States v. Mauro*, 436 U.S. 340, 343–44, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). "As 'a congressionally sanctioned interstate compact' within the Compact Clause of the United States Constitution, Art. I, § 10, cl. 3, the IAD is a federal law subject to federal construction." *Hill*, 528 U.S. at 111, 120 S.Ct. 659 (internal citations omitted).

"A detainer 'is simply a notice to prison authorities that charges are pending against an inmate elsewhere, requesting the custodian to notify the sender before releasing the inmate.'" *United States v. Crozier*, 259 F.3d 503, 513 (6th Cir.2001) (quoting *Ridgeway v. United States*, 558 F.2d 357, 360 (6th Cir.1977)). "Once the United States has filed a detainer with another jurisdiction and has made a written request for temporary custody of the defendant, Article IV of the Agreement [IAD] imposes two significant requirements: (1) trial on the charges must commence within one hundred twenty days of the arrival of the prisoner into federal custody (the 'speedy trial' provision); and (2) disposition of the pending charges must precede the return of the prisoner from federal to state custody (the 'anti-shuttling' provision)."[2] *Id.*

---

**2.** Section IV of 18 U.S.C.App. 2 § 2 states:

(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

18 U.S.C.App. § 2, Art. IV(c). Once a detainer has been lodged against a prisoner in another jurisdiction, Article IV provides a means by which the prosecutor can secure the prisoner's presence for disposition of the outstanding charges. Once the prosecutor has filed a detainer against the prisoner he or

■ While the United States may elect to file a detainer against a prisoner, it need not do so in order to obtain custody over a state prisoner. *See id.* Instead, the United States may use a writ of habeas corpus *ad prosequendum* issued by a federal court to obtain the presence of a state prisoner in federal court.[3] The use of a writ of habeas corpus *ad prosequendum* does not implicate the IAD. However, if the United States chooses to proceed with detainer, the IAD's requirements attach.

The present case requires the Court to consider whether Koufus can claim the benefit of the Act where the initial detainer was withdrawn by order of the Court. The United States argument is simple: Article IV(c)'s one hundred twenty day requirement does not apply because at Koufus's insistence there is no longer a detainer lodged against him and, therefore, this proceeding is no longer one "made possible" by the IAD. The Court agrees.

■ The United States initially filed a detainer against Koufus. As a result of the detainer, Koufus was brought before this Court. Thereafter, in an unusual turn of events Koufus motioned the Court to withdraw or set aside the detainer as unnecessary. Koufus represented to the Court that the presence of the detainer would likely adversely impact his classification in the Kentucky Department of Corrections system and that his presence in federal court could be secured by way of a writ of habeas corpus *ad prosequendum* when necessary. The United States did not object to Koufus's motion and the Court ordered the detainer against Koufus to be withdrawn. The Court's order withdrawing the detainer removed Koufus from the purview of the IAD. *See United*

*States v. Donaldson,* 978 F.2d 381, 389 (7th Cir.1992) ("Because the government withdrew its detainer against Donaldson [defendant] and notified him of the withdrawal, the provisions of the Act no longer applied to him.") This is so because it is the presence of a detainer lodged against a prisoner that triggers the IAD, not merely the presence of an indictment from another jurisdiction.

The IAD was designed in part to encourage the "determination of the proper status of any and all detainers based on untried indictments." *United States v. Eaddy,* 595 F.2d 341, 344 (6th Cir.1979). Its drafters recognized that the presence of a detainer could negatively impact a prisoner, and that some mechanism was needed to ensure that detainers did not remain lodged against prisoners indefinitely. "Because a detainer remains lodged against a prisoner without any action being taken on it, (the prisoner) is denied certain privileges within the prison, and rehabilitation may be frustrated." *Id.* The IAD's time limits aim "to reduce disruption in prisoner privileges and programs which can result when there are repeated transfers between jurisdictions." *Id.* When a detainer is in place, a prosecutor can access a prisoner held in another jurisdiction by "*mere written request for temporary custody or availability.*" *Id.* "The limitations imposed by Article IV(c) and (e) upon the prosecutor of a 'requesting jurisdiction' are intended to prevent prosecutorial abuse of the simplified method for obtaining custody over a prisoner held in another jurisdiction." *Id.*

■ The removal of the detainer saved Koufus from having his status and privileges curtailed during his incarcera-

---

she can have the prisoner made available by presenting the officials of the State in which the prisoner is incarcerated with "a written request for temporary custody or availability."

**3.** United States district courts are authorized by 28 U.S.C. § 2241(a) to grant writs of habeas corpus, including writs of habeas corpus *ad prosequendum.*

tion. However, the removal of the detainer also caused Koufus to lose the benefits provided by the IAD. Likewise, although the removal of the detainer prevented the United States from obtaining Koufus's presence merely on written request, it lifted the United States's obligation to bring the matter to trial within one hundred twenty days.[4] Koufus's proceeding is not one made possible by the IAD as there is no detainer in place. Koufus has no right to a speedy trial under Article IV(c) of the IAD and the United States's failure to bring the matter to trial within one hundred twenty days of Koufus's arrival in this jurisdiction does not require dismissal.[5]

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

The Defendant George John Koufus has moved to Dismiss Indictment for Violation of the Interstate Agreement on Detainers. The Court has filed a Memorandum Opinion. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Indictment for Violation of the Interstate Agreement on Detainers is DENIED.

This is not a final and appealable order.

---

4. The United States has completed all necessary functions of Koufus's prosecution by writ of habeas corpus *ad prosequendum.* The Court recognizes that where a detainer has been lodged, the United States's subsequent decision to secure the defendant's presence by writ of habeas corpus *ad prosequendum* does not remove it from the burdens of the IAD because the detainer remains lodged. *See Mauro,* 436 U.S. at 359, 98 S.Ct. 1834. In this case, however, the situation is quite different. The detainer itself was withdrawn by the Court. Thereafter, the only mechanism available to the United States to secure Kou-

fus's presence was a writ of habeas corpus *ad prosequendum.* The detainer itself was no longer lodged with the state authorities.

5. It should be noted that the detainer was withdrawn at Koufus's request. "Despite the mandatory language of Article IV, the rights created by the Agreement [IAD] are for the benefit of the prisoner." *Eaddy,* 595 F.2d at 344. The rights may be waived by the prisoner. *See id.* Koufus waived his right to a speedy trial by affirmatively asking the Court to withdraw the detainer.