45 A.3d 872

**Warren PITTS, Jr.**

v.

**STATE of Maryland.**

**No. 2791, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

June 5, 2012.

478

Brian L. Zavin (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Mary Ann Ince (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: KRAUSER, C.J., WRIGHT, JAMES A. KENNEY, III, (Retired, Specially Assigned), JJ.

WRIGHT, J.

Appellant, Warren James Pitts, Jr., appeals from the November 30, 2010 decision of the Circuit Court for Queen Anne's County, denying Pitts's motion to dismiss the criminal charges pending against him in that court based upon a violation of the Interstate Agreement on Detainers ("IAD"), codified at Maryland Code (1999, 2008 Repl. Vol.) §§ 8–401 to 8–417 of the Correctional Services Article ("Corr. Servs."). Subsequent to the court's denial of his motion to dismiss, Pitts was tried in the circuit court on January 28, 2011. Pursuant to an agreed statement of facts, the court found Pitts guilty of fourth degree burglary and theft of property valued at under $500.[1] Pitts was sentenced to a period of incarceration of

---

1. The other charges against Pitts were nol prossed by the State.

three years, with all but nine months suspended followed by one year of supervised probation. Pitts was released on bond pending the outcome of this appeal.

In his timely appeal, Pitts raises a single question for our review:

Is the Interstate Agreement on Detainers violated where the State withdraws a detainer but does not dismiss the underlying charges and does not bring the defendant to trial within the required 180–day period?

We conclude that the State's actions in the instant case constituted a violation of the provisions of the IAD. Thus, the circuit court's decision denying Pitts's motion to dismiss the charges against him constituted an erroneous application of the statutory provisions of the IAD to the undisputed facts that were before the court. We shall, therefore, reverse the decision of the circuit court and vacate Pitts's convictions.

## FACTUAL AND PROCEDURAL HISTORY

The following facts are undisputed. In the early morning hours on March 19, 2002, police responded to an alarm at the Nike Factory Store in Queenstown, MD. The store window appeared to have been broken with a screwdriver. Less than $300 in merchandise was missing. Pitts's DNA was later determined to be consistent with blood left at the scene of the break-in.[2] On February 2, 2007, the State charged Pitts in Case No. 004M00014326 with second-degree burglary, theft of property valued at over $500, malicious destruction of property valued at over $500, and lesser offenses.

At the time the Maryland charges were instituted, Pitts was incarcerated in the State of Virginia for offenses he had committed there. On November 13, 2007, Pitts was officially advised that a detainer had been filed against him as a result of the charges pending in Queen Anne's County, Maryland.

---

**2.** On October 18, 2006, an officer of the Maryland State Police traveled to Virginia to obtain a DNA sample from Pitts in order to verify the accuracy of a DNA match found through a DNA computer database.

On November 15, 2007, Pitts met with corrections officials in Virginia and elected to invoke his right to a speedy disposition of the Maryland charges under the IAD. On December 7, 2007, the Circuit Court for Queen Anne's County received the appropriate documentation from Pitts informing them of his desire to be tried within 180 days as per the IAD.[3]

On March 27, 2008, the State's Attorney for Queen Anne's County informed the Virginia Department of Corrections via letter that he had "decided not to extradite Mr. Pitts from Virginia" and requested that Pitts "be released from your custody in reference to our charges." The Virginia Department of Corrections responded on April 3, 2008, informing the State's Attorney that the detainer against Pitts had been removed. Pitts subsequently served the rest of his term of incarceration in Virginia.

Almost immediately after his release, on June 30, 2010, Pitts was arrested in Queen Anne's County pursuant to the warrant originally issued as a result of the charges in District Court Case No. 004M00014326. On September 7, 2010, Pitts moved to dismiss the charges against him pursuant to the requirements of the IAD. On September 22, 2010, the State charged Pitts via criminal information with the same offenses from the 2007 indictment in Case No. 17–K–10–7553. Pitts's attorney filed another motion to dismiss the charges on September 27, 2010.

At oral argument on Pitts's motion to dismiss, conducted on November 30, 2010, Pitts's attorney asserted that the State of Maryland violated the IAD by failing to bring Pitts to trial within 180 days of his invocation of his rights. The State responded by arguing that "the fact that the State withdrew the detainer, basically, stops the time period [under the IAD]." Pitts's attorney countered that the State could not circumvent the IAD by removing the detainer against Pitts without dismissing the charges giving rise to the detainer. Pitts's attorney further contended that Pitts suffered prejudice in

---

3. By the calculation of this Court, 180 days elapsed on June 4, 2008.

that, due to the delay in prosecuting him in Maryland, there was no possibility that his Maryland sentence would be made concurrent to the sentence he served in Virginia.

The circuit court denied Pitts's motion to dismiss, stating:

Well, I certainly don't see the due process issues. He's still got due process. We are willing to try him if he just shows up. But in terms of the detainer issue, as I view it, its [sic] a detainer. It has to be a detainer, so, consequently, the timeframe that was involved here, did not run, so I'm going to deny the motion to dismiss for all the reasons stated by the State.

As previously noted, Pitts was tried, convicted, and sentenced on January 28, 2011. The instant appeal was timely filed on January 28, 2011. Additional facts will be provided as necessary to support the analysis of the issues.

## ANALYSIS

■ The IAD is a congressionally sanctioned compact among forty-eight states,[4] the Federal Government, Puerto Rico, the U.S. Virgin Islands and the District of Columbia, with the purpose of establishing cooperative procedures to encourage the expeditious and orderly disposition of any untried charges, indictments, informations, or complaints that provide the basis for detainers lodged by another jurisdiction against a prisoner incarcerated in a member state.[5] Corr. Servs. § 8–403; *See State v. Pair,* 416 Md. 157, 161–62, 5 A.3d 1090 (2010) ("In short, the purpose of the IAD is to facilitate speedy disposition of charges underlying detainers."); *Stone v.*

---

4. Maryland became a member of the IAD in 1965. *State v. Pair,* 416 Md. 157, 160, 5 A.3d 1090 (2010).

5. A detainer is "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *Stone v. State,* 344 Md. 97, 108, 685 A.2d 441 (1996) (quotation marks and citation omitted); *State v. Boone,* 40 Md.App. 41, 44, 388 A.2d 150 (1978) ("[I]t is generally recognized that the term refers to a notice directed to prison authorities informing them that charges are pending in another jurisdiction against an inmate.").

*State,* 344 Md. 97, 106, 685 A.2d 441 (1996) ("The purpose of the [Interstate Agreement on Detainers] is to encourage the expeditious disposition of charges and to establish cooperative procedures among member parties to facilitate such resolution." (Citing *United States v. Mauro,* 436 U.S. 340, 351, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978)); *State v. Jefferson,* 319 Md. 674, 679, 574 A.2d 918 (1990)).

Underlying the official purpose of the IAD is the recognition that "charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." [6]   Corr.

---

**6.** In *Mauro,* 436 U.S. at 353, 98 S.Ct. 1834, the Supreme Court noted the need for a cooperative agreement amongst the states to facilitate the expeditious resolution of interstate detainers, quoting the House and Senate Reports that accompanied the legislation:

"The Attorney General has advised the committee that a prisoner who has had a detainer lodged against him is seriously disadvantaged by such action. He is in custody and therefore in no position to seek witnesses or to preserve his defense. He must often be kept in close custody and is ineligible for desirable work assignments. What is more, when detainers are filed against a prisoner he sometimes loses interest in institutional opportunities because he must serve his sentence without knowing what additional sentences may lie before him, or when, if ever, he will be in a position to employ the education and skills he may be developing." H.R.Rep. No. 91–1018, p. 3 (1970); S.Rep. No. 91–1356, p. 3 (1970), 1970 U.S.C.C.A.N. 4864, 4866.

In *Carchman v. Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985), the Court cited with approval to the following summary of the reasons for the IAD:

"[The] inmate is (1) deprived of an opportunity to obtain a sentence to run concurrently with the sentence being served at the time the detainer is filed; (2) classified as a maximum or close custody risk; (3) ineligible for initial assignments to less than maximum security prisons (i.e., honor farms or forestry camp work); (4) ineligible for trustee [sic] status; (5) not allowed to live in preferred living quarters such as dormitories; (6) ineligible for study-release programs or work-release programs; (7) ineligible to be transferred to preferred medium or minimum custody institutions within the correctional system, which includes the removal of any possibility of transfer to an institution more appropriate for youthful offenders; (8) not entitled to preferred prison jobs which carry higher wages and entitle [him] to additional good time credits against [his] sentence; (9) inhibited by

Servs. § 8–403. Timely resolution of outstanding claims also protects against "'staleness and difficulty of proof.'" *See Jefferson*, 319 Md. at 685, 574 A.2d 918 (quoting *Clipper v. State*, 295 Md. 303, 309, 455 A.2d 973 (1983)).

Article III of the IAD, codified in Maryland as Corr. Servs. § 8–405, "gives a prisoner incarcerated in one State the right to demand the speedy disposition of any untried indictment, information or complaint that is the basis of a detainer lodged against him by another State." *Carchman v. Nash*, 473 U.S. 716, 718–19, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985) (internal quotation marks and citation omitted). The present case involves Pitts's request, pursuant to § 8–405, for a speedy disposition of the charges outstanding against him in Maryland during his period of incarceration in Virginia.

The Court of Appeals of Maryland has summarized the procedures utilized to implement the IAD, stating:

> The interstate transfer process begins when the "receiving" state lodges a detainer with the warden "or other official" of the institution where the prisoner in question is currently imprisoned, in what is referred to as the custodial or "sending" state. *See* § 8–405(b). The warden or other authority in the sending state is then obligated to inform the inmate of the detainer's source and contents, and of the inmate's right, under the IAD, to request final disposition of the charges on which the detainer is based. *See* § 8–405(c).

> To exercise the right of speedy disposition, the inmate must file a request for IAD relief with the warden, who must forward the request to appropriate authorities in the receiving state. *See* § 8–405(d). This document operates as a request by the prisoner for final disposition of all untried charges underlying the detainer and is deemed to be

the denial of possibility of parole or any commutation of his sentence; (10) caused anxiety and thus hindered in the overall rehabilitation process since he cannot take maximum advantage of his institutional opportunities."
*Id.* at 730 n. 8, 105 S.Ct. 3401 (quoting *Cooper v. Lockhart*, 489 F.2d 308, 314 n. 10 (8th Cir.1973)).

a waiver of extradition. *See* § 8–405(d); *Mauro,* 436 U.S. at 351 [98 S.Ct. 1834].

Once the receiving state receives the request, the IAD requires that jurisdiction to bring the prisoner to trial within 180 days, unless one of two provisions of the IAD is invoked.[7]  . . . If neither of these tolling provisions is properly invoked, then the receiving state's failure to comply with the 180–day provision requires dismissal of the charges, with prejudice. *See* § 8–407(c).

*Pair,* 416 Md. at 162–64, 5 A.3d 1090 (footnotes omitted). The requirement that the charges be dismissed with prejudice should the receiving state fail to bring the prisoner to trial within 180 days is statutorily mandated in Corr. Servs. § 8–407(c), providing "in the event that an action . . . is not brought to trial within [the relevant period], the appropriate court . . . shall enter an order dismissing the same with prejudice." *See also Carchman,* 473 U.S. at 730, 105 S.Ct. 3401 ("Article III enables a prisoner to require the State lodging the detainer either to drop the charge and resulting detainer or to bring the prisoner to trial."). Where the State is properly notified of the prisoner's desire to resolve the charges expeditiously, "it is expected to see that the case is actually tried within the 180 days." *Dennett v. State,* 19 Md.App. 376, 384, 311 A.2d 437 (1973).

In the instant case, the State of Maryland duly informed the correctional institution where Pitts was incarcerated that there were charges pending against Pitts in Queen Anne's County, Maryland. Pursuant to those charges, the State of Maryland requested that a detainer be placed in Pitts's record. Pitts was informed of the detainer on November 12, 2007, and filed a timely and complete request to have the Maryland charges resolved within 180 days pursuant to the requirements of the IAD, which was received by the appropriate officials in Maryland on December 7, 2007. At the request of the State's Attorney for Queen Anne's County, the Virginia

---

**7.** Neither party contends that the tolling provisions provided in the IAD are applicable in the instant case.

Department of Corrections removed the detainer from Pitts's record on or about April 3, 2008. The charges against Pitts, however, remained active throughout the remainder of his incarceration in Virginia, and afterward, when he was arrested pursuant to the original 2007 warrant on June 30, 2010.

Pitts asserts that the circuit court erred by failing to dismiss the charges against him due to the State's failure to bring him to trial on the relevant charges within the 180–day time limit imposed by the IAD. Specifically, Pitts argues that the State's withdrawal of the detainer was not a final disposition of the charges against him as required by Corr. Servs. § 8–405(a); and therefore, pursuant to Corr. Servs. § 8–407(c), the charges should have been dismissed with prejudice.

The State responds, asserting that by failing to appear at the motions hearing, Pitts waived his IAD claim. Addressing Pitts's argument on the merits, the State contends that Maryland's withdrawal of the detainer pending against Pitts was sufficient to "remove [Pitts] from the purview of the IAD," and therefore, the circuit court properly denied Pitts's motion to dismiss the charges against him.

Whereas the facts before us are undisputed, we need only determine whether the circuit court correctly interpreted and applied the relevant provisions of the IAD. Where a trial court's determination requires the interpretation and application of Maryland's constitutional, statutory or case law, we must determine whether the trial court's legal conclusions are correct utilizing a *de novo* standard of review. *See e.g.* *Schisler v. State*, 394 Md. 519, 535, 907 A.2d 175 (2006).

After a review of the published opinions of Maryland's appellate courts, it appears that neither this Court nor the Court of Appeals has directly addressed in any previous decision, whether the voluntary withdrawal of the detainer is sufficient to eclipse a prisoner's rights under the IAD where a prisoner has properly invoked his right to a speedy trial under the IAD. Whereas "[t]he IAD is a congressionally sanctioned compact, and as a federal law is subject to federal construction," *Pair*, 416 Md. at 168, 5 A.3d 1090 (citing *Cuyler v.*

*Adams,* 449 U.S. 433, 442, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981)), we would ordinarily defer to interpretations of the Act provided by the United States Supreme Court. The Supreme Court, however, also has not expressly addressed the issue that is before us in the instant case.

■ We shall, therefore, be guided by the express direction of the legislature, that the provisions of the IAD are to be "liberally construed to effectuate its purposes." Corr. Servs. § 8–411; *Pair,* 416 Md. at 169, 5 A.3d 1090. We understand that the IAD is comprehensive "and all of its parts have to be read together, in harmony, in order to carry out its dual purpose." *Boyd v. State,* 51 Md.App. 197, 206, 441 A.2d 1133, *aff'd,* 294 Md. 103, 447 A.2d 871 (1982). We further recognize the value in following the lead of other member States who have addressed similar issues to ensure that the IAD is interpreted consistently amongst the Courts of the member States. *See Clipper,* 295 Md. at 309, 455 A.2d 973 ("[I]t is desirable that the party states be consistent in their interpretations of the IAD.").

We find the opinions of the Court of Appeals for Colorado and the Court of Appeals for Wisconsin to be persuasive. In *People v. Robertson,* 56 P.3d 121 (Colo.Ct.App.2002), the State of Colorado lodged a detainer against a prisoner serving a sentence in Oregon. *Id.* at 122. After the prisoner invoked his right to prompt disposition of the charges under the IAD, Colorado, on its own motion, withdrew the detainer because it was not prepared to go forward with a trial at that time. *Id.* However, Colorado did not dismiss the underlying charges and, in fact, filed another detainer the day before the prisoner was to be released from his confinement in Oregon, more than 180 days after he had filed his request under the IAD. *Id.* In response to the prisoner's motion to dismiss, Colorado argued that once the detainer was removed, the IAD ceased to apply, notwithstanding that the charges were not dismissed. *Id.* at 123. Upholding the trial court's dismissal of the charges against the prisoner, the Colorado Court of Appeals first looked to the plain language of the IAD:

Section 24–60–501, art. III(a) provides that once a detainer "has been lodged" and the underlying complaint remains "pending," defendant has a right to demand disposition within 180 days. The present perfect tense, "has been lodged" indicates that an event occurred in the past prior to other events and implies that once the event has occurred—here the lodging of the detainer—certain consequences result. In this case, defendant obtained the right to demand disposition of the charges. The statute does not require that the detainer remain pending, or that it continue to be lodged, only that it "has been lodged." We conclude that the withdrawal of the detainer does not change the fact that a detainer "has been lodged."

Similarly, under § 24–60–501, art. III(d), "any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations, or complaints on the basis of which detainers have been lodged against the prisoner." Again, the IAD refers to detainers that "have been lodged," indicating that a defendant's request is not contingent on the detainer being currently in place. Moreover, under this section, a defendant's request for disposition is directed to the "untried indictments, informations, or complaints" and not the detainer. Hence, the prosecution's withdrawal of the detainer by itself is not responsive to the request.

*Id.* The *Robertson* Court distinguished *United States v. Donaldson,* 978 F.2d 381 (7th Cir.1992), cited by the State, noting that in *Donaldson,* the government not only withdrew the detainer but also dismissed the underlying charges against the prisoner without prejudice; thus, the *Donaldson* Court provided a "final disposition" of all of the outstanding charges; whereas in *Robertson,* the State failed to take any action to resolve the charges pending against the prisoner. *Id.* at 123–24.. The *Robertson* Court finally concluded that:

to allow charges to remain pending despite a defendant's request for speedy disposition, as occurred here, contravenes the explicit purpose of the IAD to "encourage the

expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." Section 24–60–501, art. I.

*Id.* at 124.

Similarly, in *State v. Tarrant,* 321 Wis.2d 69, 772 N.W.2d 750 (Wis.Ct.App.2009), the appealing prisoner invoked his rights under the IAD after Wisconsin filed an arrest warrant against him while he was serving a sentence in Kansas. *Id.* at 752. Wisconsin then modified the warrant so that it would not operate as an interstate detainer. *Id.* When Tarrant later moved to dismiss the charges in Wisconsin for a violation of the IAD, the trial court concluded that the modification of the warrant rendered the IAD inapplicable. *Id.* The Wisconsin Court of Appeals reversed, holding that "[o]nce a prisoner has properly requested a prompt and final disposition of pending criminal charges, the only way the State can avoid its obligation to bring the prisoner to trial within 180 days of the request is to dismiss the untried complaint or information." *Id.* at 757.

The *Tarrant* Court, adopting the reasoning set forth by the Court of Appeals of Colorado in *Robertson,* explained:

We believe that the approach of the Colorado Court of Appeals best fulfills the principal purpose of the IAD and adopting that approach insures uniformity in interpretation of the IAD. *See Estate of Matteson v. Matteson,* 2008 WI 48, P42, 309 Wis.2d 311, 749 N.W.2d 557 ("The purpose of uniform laws is to establish both uniformity of statutory law and uniformity of case law construing the statutes, ensuring certainty and guidance to litigants who rely on the courts to interpret uniform statutes in a predictable and consistent manner."). Under the Colorado interpretation of the IAD, the withdrawal of the detainer must be accompanied by the dismissal of the charges if the time limits of the IAD are to be avoided. This makes sense, because a prisoner who responds to the lodging of a detainer by filing an Inmate's Notice of Place of Imprisonment and Request for Disposi-

tion of Indictments, Informations or Complaints, accompanied by a warden's Certificate of Inmate Status, as provided for by WIS. STAT. § 976.05(3)(a), is demanding a prompt and final disposition of the underlying charges. A final disposition can only be achieved by a trial or dismissal of the charges. It is only after the charges "have gone away" that the prisoner is no longer exposed to the detrimental effects of pending criminal charges.

Applying the Colorado approach requires us to reverse Tarrant's conviction and dismiss the charges because he was not brought to trial within 180 days of his demand for a prompt and final disposition. It was not enough for the Green Lake county district attorney to modify the warrant to exclude the possibility of interstate extradition. Because the underlying criminal complaint was still pending, the basis for Tarrant's right to demand a speedy trial still existed.

*Id.* at 756–57.

The operative language of Articles III and V of the Maryland version of the IAD, which are relevant to the instant case, are substantively identical to those sections of the statute as it was adopted in Colorado and Wisconsin. *Cf.*, Md.Code, Corr. Servs. § 8–405; Md.Code, Corr. Servs. § 8–407(c); Colo Rev. Stat. 24–60–501, art. III; Colo Rev. Stat. 24–60–501, art. V(c); Wis. Stat. § 976.05(3); Wis. Stat. § 976.05(5)(c).

█ It is axiomatic that when interpreting statutes to discern legislative intent, we first examine the plain language of the statute itself. *See Pair,* 416 Md. at 168, 5 A.3d 1090 ("[W]e must examine the provisions of the IAD with the goal of ascertaining the legislative intent, by resorting first to the plain language of the law." (Citation omitted)). If the language of the statute is clear and unambiguous, we need not engage in any additional application of the cannons of interpretation; we simply apply the statute as it is written. *See Downes v. Downes,* 388 Md. 561, 571–72, 880 A.2d 343 (2005) ("If the language is clear and unambiguous, our search for

legislative intent ends and we apply the language as written in a commonsense manner.").

The relevant portion of Article III of the IAD provides:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within 180 days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of the prisoner's imprisonment and the prisoner's request for a final disposition to be made of the indictment, information, or complaint; . . . .

Corr. Servs. § 8–405(a).

The relevant portion of Article V of the IAD provides:

If the appropriate authority shall refuse or fail to accept temporary custody of the person, or in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in § 8–405 or § 8–406 of this subtitle (Article III or IV of the Agreement), the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based on the indictment, information, or complaint shall cease to be of any force or effect.

Corr. Servs. § 8–407(c).

■ The State does not dispute that in the instant case, Pitts was imprisoned in the State of Virginia at the time the Maryland charges were filed. Nor does the State contend that the detainer lodged against Pitts in Virginia was invalid, or that the detainer did not activate the rights of Pitts under the IAD. Nor does the State assert that the written notice

indicating Pitts's desire to invoke his right to a speedy trial under the IAD was deficient in any way. Nor does the State dispute that Pitts was finally tried more than 180 days after his request for final resolution of the pending charges was received. The State asserts only that its voluntary withdrawal of the detainer eclipsed Pitts's rights under the statute. Based upon the reasoning set forth by the Courts in *Robertson* and *Tarrant,* we disagree.

In the instant case, a detainer, based upon an "untried indictment, information, or complaint" pending in Maryland, having been filed against Pitts "during the continuance of [his] term of imprisonment," entitled Pitts to request "a final disposition" of all the charges outstanding against him in the State of Maryland. Corr. Servs. § 8–405. The only burden placed upon Pitts in order to invoke his right under the IAD was that he "cause[ ] to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of the prisoner's imprisonment and the prisoner's request for a final disposition to be made of the indictment, information, or complaint." Corr. Servs. § 8–405; *Pair,* 416 Md. at 178, 5 A.3d 1090 (" '[T]he legislature has placed one, and only one burden on the prisoner, that is, to ask the prison official who has custody over him to prepare and send the forms to the jurisdiction from which a detainer is lodged against him.' " (Quoting *Pittman v. State,* 301 A.2d 509, 512–13 (Del.1973))). Pitts met this burden. All other duties and responsibilities imposed by the statute fall upon the relevant government actors of the member States. Corr. Servs. §§ 8–401 to 8–417; *see Pair,* 416 Md. at 177, 5 A.3d 1090 ("It is also understood that '[t]he burden on compliance with the procedural requirements of the IAD rests upon the party states and their agents, the prisoner, who is to benefit by this statute, is not to be held accountable for official administrative errors which deprive him of that benefit.' " (Quoting *Pittman,* 301 A.2d at 514)).

The language of the statute signals through its use of the

present perfect tense [8] that once a detainer "has been" lodged against a prisoner, and the prisoner has properly requested final disposition of the underlying charges, the subsequent withdrawal of that detainer is of no effect because it does not change the fact that a valid detainer was lodged against the prisoner at some point previously. Corr. Servs. § 8–405(a); *Robertson,* 56 P.3d at 123. Furthermore, under the clear language of the statute, Pitts's compliant notice pursuant to the IAD, received by the State on December 7, 2007, specifically requested the final resolution of the charges underlying the detainer, not just that the detainer lodged against him be withdrawn. Corr. Servs. § 8–405. Therefore, the State could not avoid its obligations under the IAD simply by withdrawing the detainer, because withdrawing the detainer did not provide a final resolution of the charges pending against Pitts as required by the IAD. Corr. Servs. § 8–405; *See Robertson,* 56 P.3d at 123 ("Hence, the prosecution's withdrawal of the detainer by itself is not responsive to the request," for disposition of the charges); *Tarrant,* 772 N.W.2d at 757 ("Because the underlying criminal complaint was still pending, the basis for Tarrant's right to demand a speedy trial still existed.").

The clear language of the statute further provides that where a prisoner properly invokes his right to the timely resolution of the untried charges underlying a valid detainer lodged against him while he is incarcerated in another state, "the prisoner *shall* be brought to trial within 180 days," Corr. Servs. § 8–405(a) (emphasis added), and directs that the State's failure to resolve the underlying charges, *i.e.,* through a trial or dismissal, within the 180 days shall result in the dismissal of the underlying charges *"with prejudice."* Corr. Servs. § 8–407(c) (emphasis added); *see also Carchman,* 473

---

**8.** The *Robertson* Court in its analysis engaged in a brief English grammar lesson. 56 P.3d at 123. The present perfect tense is formed with a present form of "to have" plus the past participle of the verb (which can be either regular or irregular in form). This tense indicates either that an action was completed (finished or "perfected" at some point in the past) or that the action extends to the present. http://grammar.ccc.commnet.edu/grammar/tenses/present_perfect.htm. Last visited April 13, 2012.

U.S. at 730, 105 S.Ct. 3401 (holding that the IAD required the State, having received a proper request, to "either ... drop the charge and resulting detainer or to bring the prisoner to trial."). More than 180 days having elapsed between the date the State received Pitts's fully compliant request for resolution of the charges underlying the detainer pursuant to the IAD and the date Pitts was tried, under the plain language of the statute, the charges underlying the detainer should have been dismissed with prejudice. To allow the State to circumvent the requirements of the IAD by the simple expedient of withdrawing the detainer lodged against Pitts without otherwise addressing the underlying charges pending against Pitts, after Pitts had properly invoked the protections afforded to him under that statute, would subvert the explicit purpose of the IAD to "encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." Corr. Servs. § 8–403; *Pair*, 416 Md. at 162, 5 A.3d 1090 ("In short, the purpose of the IAD is to facilitate speedy disposition of charges underlying detainers"). Therefore, we conclude that the circuit court improperly denied Pitts's motion to dismiss the charges that formed the basis for the detainer lodged against him during his incarceration in Virginia in 2007.

The State cites *United States v. Koufus,* 280 F.Supp.2d 647 (W.D.Ky.2003), in support of its argument. In *Koufus,* the Federal Court for the Western District of Kentucky considered the motion to dismiss of a prisoner of the State of Kentucky, who, three years before that decision, had successfully lobbied for the withdrawal of a detainer lodged against him by the federal government, arguing that the detainer would likely adversely impact his classification in the Kentucky Department of Corrections system and that his presence in federal court could be secured by way of a writ of habeas corpus *ad prosequendum* when necessary. *Id.* at 648–49. The defendant later sought dismissal of the federal charges for the federal government's alleged violation of the 120–day requirement imposed upon the receiving State by

Article IV of the IAD. *Id.* at 647. The Federal District Court declined to dismiss the charges, stating:

> The present case requires the Court to consider whether Koufus can claim the benefit of the Act where the initial detainer was withdrawn by order of the Court. The United States argument is simple: Article IV(c)'s one hundred twenty day requirement does not apply because at Koufus's insistence there is no longer a detainer lodged against him and, therefore, this proceeding is no longer one "made possible" by the IAD. The Court agrees.
>
> $*$ $*$ $*$
>
> . . . The Court's order withdrawing the detainer removed Koufus from the purview of the IAD. *See United States v. Donaldson,* 978 F.2d 381, 389 (7th Cir.1992) ("Because the government withdrew its detainer against Donaldson [defendant] and notified him of the withdrawal, the provisions of the Act no longer applied to him."). This is so because it is the presence of a detainer lodged against a prisoner that triggers the IAD, not merely the presence of an indictment from another jurisdiction.

*Id.* at 650. Emphasizing that its focus was on the defendant's request that the detainer be removed, the Court ended its opinion with the following footnote:

> It should be noted that the detainer was withdrawn at Koufus's request. "Despite the mandatory language of Article IV, the rights created by the Agreement [IDA] are for the benefit of the prisoner." [*United States v.*] *Eaddy,* 595 F.2d [341,] 344 [ (6th Cir.1979) ]. The rights may be waived by the prisoner. *See id.* Koufus waived his right to a speedy trial by affirmatively asking the Court to withdraw the detainer.

*Id.* at 651 n. 5.

*Koufus* does not support the State's argument as it is factually distinguishable from the instant case. In *Koufus,* the prisoner waived his right to a speedy trial by requesting that the operative detainer be withdrawn thereby removing him from the protection of the IAD. Accordingly, the prisoner

did not suffer the penalties associated with a valid detainer after properly invoking his right to the speedy disposition to the charges pending against him in another jurisdiction under the IAD as did Pitts in the instant case. Therefore, we find that our holding in the instant case does not in any way conflict with the case cited by the State, insofar as we have determined that the provisions of the IAD, *once properly invoked in response to a valid detainer,* cannot be subverted by the withdrawal of the detainer without the accompanying resolution of the underlying charges.

**JUDGMENTS OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY REVERSED AND APPELLANT'S CONVICTIONS VACATED. COSTS TO BE PAID BY QUEEN ANNE'S COUNTY.**